

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

JUN 18 2020

ARTHUR JOHNSTON
BY_____ DEPUTY

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

EXXON MOBIL CORPORATION,

      **Plaintiff**

  v.

CROSBY-MISSISSIPPI RESOURCES, LTD., A MISSISSIPPI LIMITED PARTNERSHIP ("CMR"), LYNN CROSBY GAMMILL, INDIVIDUALLY, AS GENERAL PARTNER OF CMR, AS CO-EXECUTOR OF THE ESTATE OF STEWART GAMMILL, III, AS CO-CONSERVATOR OF LUCIUS OLEN CROSBY GAMMILL, AND AS A TRUSTEE OF LUCIUS OLEN CROSBY GAMMILL FAMILY TRUST, STEWART GAMMILL, IV, INDIVIDUALLY, AS GENERAL PARTNER OF CMR, AS CO-EXECUTOR OF THE ESTATE OF STEWART GAMMILL, III, AS CO-CONSERVATOR OF LUCIUS OLEN CROSBY GAMMILL, AS A TRUSTEE OF LUCIUS OLEN CROSBY GAMMILL FAMILY TRUST, AND AS TRUSTEE OF THE STEWART GAMMILL IV FAMILY TRUST, LUCIUS OLEN CROSBY GAMMILL, JENNIFER LYNN GAMMILL MCKAY, INDIVIDUALLY, AS GENERAL PARTNER OF CMR, AS CO-EXECUTOR OF THE ESTATE OF STEWART GAMMILL, III, AS CO-CONSERVATOR OF LUCIUS OLEN CROSBY GAMMILL, AS TRUSTEE OF LUCIUS OLEN CROSBY GAMMILL FAMILY TRUST, AND AS TRUSTEE OF THE JENNIFER LYNN GAMMILL MCKAY FAMILY TRUST, CMR, LLC, STEWART GAMMILL, IV, LLC, JENNIFER G. MCKAY, LLC, W. P. MCMULLAN, III, SUSAN GAY HIGH WILLIAMS, SHERRILL WILKES HIGH, JACQUELINE W. REED, SEAN MARIE HIGH SMITH AS TRUSTEE OF THE FREEMAN WILLIS SMITH III TRUST, SILVER CREEK ENTERPRISES, LLC, STEPHEN F. HIGH, MILDRED REED GORDON AS TRUSTEE OF THE MILDRED REED GORDON REVOCABLE TRUST, MILDRED OWINGS AS TRUSTEE OF THE MILDRED REED GORDON REVOCABLE TRUST, JOHN M. FAIRCHILD, MARK A. FAIRCHILD, THOMAS R. SLOUGH, III, MARY GEORGE W. MCMULLAN, CASSANDRA B. TORBETT, ROBERT A. BASS, ROBERT REED DOYLE, INDIVIDUALLY AND AS TRUSTEE OF THE MARIELLA HAIRSTON DOYLE FAMILY TRUST, LYNNE FAIRCHILD HARVISON, THERESA JAN MICHAELS, ELDIA LIN POPE, AND BANKFIRST FINANCIAL SERVICES

      **Defendants**

Case No. _3:20cv410-TSL-RHW_

## COMPLAINT

Exxon Mobil Corporation, formerly known as Exxon Corporation, ("Exxon") represents the following as its Complaint:

## INTRODUCTION

This suit arises out of the long saga of *Exxon Corporation v. Crosby-Mississippi Resources, Ltd., A Mississippi Limited Partnership, et al.,* Case No. 3:89-cv-0627-DPJ-RHW in this Court (the "CMR Suit"), which Exxon filed as a collection suit in 1989 to recover damages for breach of an oil and gas Exploration Agreement concerning the exploration, development and operation of the Poplarville Field in Pearl River County, Mississippi. Exxon's claims for damages, interest, attorneys' fees and costs in that case exceed $50,000,000. Exxon is filing the instant suit for declaratory judgment and to set aside fraudulent transactions by or on behalf of defendants in the CMR Suit under the Mississippi Uniform Fraudulent Transfer Act.

## JURISDICTION AND VENUE

1.      The matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states. The Court has jurisdiction under 28 U.S.C. §1332.

2.      At least one of the defendants resides in this judicial district; a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property that is subject to the action is situated, in this judicial district; and/or at least one of the defendants is subject to personal jurisdiction in this judicial district at the time this action is commenced. Venue, therefore, is proper under 28 U.S.C. §1391(a).

## PARTIES

3.      Plaintiff Exxon is a New Jersey corporation with its principal place of business located in Irving, Texas.

2

## CMR AND GAMMILL FAMILY ENTITIES

4.      Defendant Crosby-Mississippi Resources, Ltd., A Mississippi Limited Partnership ("CMR") is a Mississippi limited partnership with its principal place of business located in Hattiesburg, Mississippi. CMR is also a defendant in the CMR Suit.

5.      Defendant Lynn Crosby Gammill is an adult resident of Forrest County, Mississippi. She is also a defendant in the CMR Suit in her individual capacity, as a general partner of CMR, as a co-executor of the Estate of Stewart Gammill, III, and as co-conservator of Lucius Olen Crosby Gammill. She is made a defendant in the instant suit in her individual capacity, as a general partner of CMR, as a co-executor of the Estate of Stewart Gammill, III, as co-conservator of Lucius Olen Crosby Gammill, and as a trustee of Lucius Olen Crosby Gammill Family Trust, which is a limited partner of CMR.

6.      Defendant Stewart Gammill, IV is an adult resident of Forrest County, Mississippi. He is also a defendant in the CMR Suit in his individual capacity, as a co-executor of the Estate of Stewart Gammill, III, and as co-conservator of Lucius Olen Crosby Gammill. He is made a defendant in the instant suit in his individual capacity, as a general partner of CMR, as a co-executor of the Estate of Stewart Gammill, III, as co-conservator of Lucius Olen Crosby Gammill, as a trustee of Lucius Olen Crosby Gammill Family Trust, which is a limited partner of CMR, and as trustee of the Stewart Gammill IV Family Trust, which is a limited partner of CMR.

7.      Defendant Lucius Olen Crosby Gammill is an adult resident of Forrest County, Mississippi. He is also a defendant in the CMR Suit in his individual capacity. Since September 16, 2009, he has been under conservatorship with Lynn Crosby Gammill, Stewart Gammill, IV and Jennifer Lynn Gammill McKay serving as co-conservators. He is made a defendant in the instant suit in his individual capacity.

8.     Defendant Jennifer Lynn Gammill McKay is an adult resident of Forrest County, Mississippi. She is also a defendant in the CMR Suit in her individual capacity, as a co-executor of the Estate of Stewart Gammill, III, and as co-conservator of Lucius Olen Crosby Gammill. She is made a defendant in the instant suit in her individual capacity, as a general partner of CMR, as a co-executor of the Estate of Stewart Gammill, III, as co-conservator of Lucius Olen Crosby Gammill, as a trustee of Lucius Olen Crosby Gammill Family Trust, which is a limited partner of CMR, and as trustee of the Jennifer Lynn Gammill McKay Family Trust, which is a limited partner of CMR.

9.     Defendant CMR, LLC is a Mississippi limited liability company with its principal place of business in Forrest County, Mississippi, and a general partner of CMR. Upon information and belief, Stewart Gammill, III  was the sole member of CMR, LLC, before it became part of the Estate of Stewart Gammill, III when he passed.

10.     Defendant Stewart Gammill, IV, LLC is a Mississippi limited liability company with its principal place of business in Forrest County, Mississippi, and a general partner of CMR. Upon information and belief, Stewart Gammill, IV is the sole member of Stewart Gammill, IV, LLC.

11.     Defendant Jennifer G. McKay, LLC is a Mississippi limited liability company with its principal place of business in Forrest County, Mississippi, and a general partner of CMR. Upon information and belief, Jennifer Lynn Gammill McKay is the sole member of Jennifer G. McKay, LLC.

## LIMITED PARTNERS OF CMR

12.     Defendant W. P. McMullan, III is an adult resident of New York and a limited partner of CMR.

13.    Defendant Susan Gay High Williams is an adult resident of Lamar County, Mississippi, and a limited partner of CMR.

14.    Defendant Sherrill Wilkes High is an adult resident of Lamar County, Mississippi, and a limited partner of CMR.

15.    Defendant Jacqueline W. Reed is an adult resident of North Carolina and a limited partner of CMR.

16.    Defendant Sean Marie High Smith is an adult resident of Illinois and  trustee of the Freeman Willis Smith III Trust, which is a limited partner of CMR.

17.    Defendant Silver Creek Enterprises, LLC is a Mississippi limited liability company with its principal place of business in Hinds County, Mississippi, and a limited partner of CMR. Upon information and belief, the members of Silver Creek Enterprises, LLC are T. L. Reed, IV, Scott Gaston and James Yagow, all adult residents of Hinds County, Mississippi.

18.    Defendant Stephen F. High is an adult resident of Lamar County, Mississippi, and a limited partner of CMR.

19.    Defendant Mildred Reed Gordon is an adult resident of Virginia and trustee of the Mildred Reed Gordon Revocable Trust, which is a limited partner of CMR.

20.    Defendant Mildred Owings is an adult resident of Virginia and trustee of the Mildred Reed Gordon Revocable Trust, which is a limited partner of CMR.

21.    Defendant John M. Fairchild is an adult resident of Forrest County, Mississippi, and a limited partner of CMR.

22.    Defendant Mark A. Fairchild is an adult resident of Lamar County, Mississippi, and a limited partner of CMR.

23.     Defendant Thomas R. Slough, III is an adult resident of Georgia and a limited partner of CMR.

24.     Defendant Mary George W. McMullan is an adult resident of Tennessee and a limited partner of CMR.

25.     Defendant Cassandra B. Torbett is an adult resident of Montana and a limited partner of CMR.

26.     Defendant Robert A. Bass is an adult resident of North Carolina and a limited partner of CMR.

27.     Defendant Robert Reed Doyle is an adult resident of Humphries County, Mississippi, and a limited partner of CMR. He is made a defendant in the instant suit in his individual capacity and as trustee of the Mariella Hairston Doyle Family Trust, which is a limited partner of CMR.

28.     Defendant Lynne Fairchild Harvison, is an adult resident of Forrest County, Mississippi, and a limited partner of CMR.

29.     Defendant Theresa Jan Michaels is an adult resident of Forrest County, Mississippi, and a limited partner of CMR.

30.     Defendant Eldia Lin Pope is an adult resident of Pearl River County, Mississippi, and a limited partner of CMR.

## BANKFIRST FINANCIAL SERVICES

31.     Defendant BankFirst Financial Services is a bank chartered by the State of Mississippi with its principal place of business located in Columbus, Mississippi.

32.     BankFirst Financial Services is a necessary party because it claims a lien on real property identified herein as the Hardy Street Property by virtue of a certain Deed of Trust dated

April 3, 2020 granted by Stewart Gammill, IV, individually and as attorney-in-fact for Lucius Olen Crosby Gammill, and Jennifer (Lynn) Gammill McKay, which was recorded in the property records of Forrest County, Mississippi, as Instrument No. 803774 on April 21, 2020.

33.    BankFirst Financial Services is a necessary party because, upon information and belief, it claims a lien on real property claimed by Family Lands, LP by virtue of a certain Deed of Trust granted by Family Lands, LP.

### THE CMR SUIT

34.    In 1983 Exxon entered into an oil and gas Exploration Agreement with CMR, Lynn Crosby Gammill, individually, and Stewart Gammill, III as Successor Trustee for the Stewart Gammill IV Trust No. 2, the Lucius Olen Crosby Gammill Trust No.2 and the Jennifer Lynn Gammill Trust No. 2 (collectively, the "Trusts Nos. 2") concerning exploration and development, and operation of numerous gas wells in the Poplarville Field in Pearl River County, Mississippi.

35.    In 1989 Exxon filed the CMR Suit against CMR, Lynn Crosby Gammill, individually and as a general partner of CMR, Stewart Gammill, III, as a general partner of CMR and Successor Trustee of the Trusts Nos. 2, Stewart Gammill, IV, Lucius Olen Crosby Gammill and Jennifer Lynn Gammill (now McKay) (collectively, "CMR, et al.").

36.    Exxon asserted breach of contract claims against CMR, et al. and sought judgment for damages, contractual interest, statutory interest, attorneys' fees and costs in the CMR Suit.

37.    In 2004 the Court in the CMR Suit, pursuant to Federal Rule of Civil Procedure 53, entered an order (Doc 525) appointing a master to conduct an accounting concerning the financial transactions and obligations between and among Exxon and CMR, et al. in accordance with the rulings in that case, stipulations entered into by the parties and applicable law.

38.     In 2013 the Court in the CMR Suit entered an order (Doc 592) appointing Kenneth A. Rutherford, as successor master to complete the accounting ordered by the Court.

39.     On October 5, 2017 Stewart Gammill, III passed away, and by order of the Court (Doc 694) the co-executors of his estate, Lynn Crosby Gammill, Stewart Gammill, IV and Jennifer Lynn Gammill McKay, were substituted in his place as defendants in the CMR Suit.

40.     On April 12, 2019 the successor master issued an interim status report to the Court (Doc 710), wherein on page 105 reference is made to separate "Phase 6 Calculations and Phase 7 Interest summary schedules" for CMR, et al. that were approved by orders of the successor master (Docs 700, 701, 702 and 708) (collectively, the "Approved Summary Schedules").

41.     The Approved Summary Schedules show amounts calculated from June 1984 through December 2018 as due to Exxon from CMR (and, therefore, also from Stewart Gammill, III and Lynn Crosby Gammill as general partners of CMR) in the amount of $14,332,947 (Doc 701-1) (**Exhibit 1**), from Lynn Crosby Gammill, individually, in the amount of $20,265,721(Doc 700-1) (**Exhibit 2**), and from the Trusts Nos. 2 (and, therefore, also from Stewart Gammill, III as Successor Trustee of the Trusts Nos. 2) in the amount of $18,540,970 (Doc 702-1) (**Exhibit 3**). The foregoing amounts due from Stewart Gammill, III are now due from his estate.

42.     The Approved Summary Schedules show amounts calculated from January 1988 through December 2018 as due to Exxon from Stewart Gammill, IV, Lucius Olen Crosby Gammill and Jennifer Lynn Gammill McKay in the amount of $736,795 each (Docs 708-1, 708-2 and 708-3, respectively) (*in globo* **Exhibit 4**).

43.     Subsequent to entry of the orders of the successor master (Docs 700, 701, 702 and 708), CMR, et al. took the position in the CMR Suit that prejudgment interest should not be awarded from the inception of the CMR Suit or, alternatively, during the pendency of the

accounting phase. Consequently the successor master noted on page 106 of the interim status report to the Court (Doc 710) that there may be legal issues that require a determination by the Court with respect to the award of prejudgment interest.

44.     On May 9, 2019 the Court in the CMR Suit entered an order (Doc 711) staying the accounting pending mediation. As a condition to mediation, CMR, et al. were required to furnish Exxon with sworn financial statements showing their assets, liabilities and net worth and to provide certain financial information to an independent CPA whose job it was to determine whether the financial statements are accurate, complete and show the fair market value of the assets of CMR, et al.

## UNIFORM FRAUDULENT TRANSFER ACT

45.     Each of the following transactions alleged in this Complaint is subject to the Mississippi Uniform Fraudulent Transfer Act, Miss. Code Ann. (1972) §15-3-101, *et seq.* (the "Uniform Act").

46.     Exxon has a "claim" against each of CMR, Stewart Gammill, III, the Estate of Stewart Gammill, III, Lynn Crosby Gammill, Stewart Gammill, IV, Lucius Olen Crosby Gammill and Jennifer Lynn Gammill McKay within the meaning of Section 15-3-101(c) of the Uniform Act.

47.     Exxon is a "creditor" within the meaning of Section 15-3-101(d) of the Uniform Act relative to each of CMR, Stewart Gammill, III, the Estate of Stewart Gammill, III, Lynn Crosby Gammill, Stewart Gammill, IV, Lucius Olen Crosby Gammill and Jennifer Lynn Gammill McKay.

48.     Each of CMR, Stewart Gammill, III, the Estate of Stewart Gammill, III, Lynn Crosby Gammill, Stewart Gammill, IV, Lucius Olen Crosby Gammill and Jennifer Lynn Gammill McKay owes a "debt" to Exxon within the meaning of Section 15-3-101(e) of the Uniform Act.

49.     Each of CMR, Stewart Gammill, III, the Estate of Stewart Gammill, III, Lynn Crosby Gammill, Stewart Gammill, IV, Lucius Olen Crosby Gammill and Jennifer Lynn Gammill McKay is a "debtor" within the meaning of Section 15-3-101(f) of the Uniform Act relative to Exxon.

50.     Each of Stewart Gammill, IV, Lucius Olen Crosby Gammill and Jennifer Lynn Gammill McKay is an "insider" within the meaning of Section 15-3-101(g)(iii) of the Uniform Act relative to CMR.

51.     Each of Stewart Gammill, III, Lynn Crosby Gammill, Stewart Gammill, IV, Lucius Olen Crosby Gammill and Jennifer Lynn Gammill McKay is a "relative" of the others within the meaning of Section 15-3-101(k) of the Uniform Act.

52.     Each of Stewart Gammill, IV, Lucius Olen Crosby Gammill and Jennifer Lynn Gammill McKay is an "insider" within the meaning of Section 15-3-101(g)(i) of the Uniform Act relative to Stewart Gammill, III  and Lynn Crosby Gammill.

53.     Each of the defendant trustees and each of the corresponding trusts is a "person" within the meaning of Section 15-3-101(i) of the Uniform Act.

54.     Stewart Gammill, IV, LLC is an "affiliate" within the meaning of Section 15-3-101(a)(iii) of the Uniform Act relative to Stewart Gammill, IV.

55.     Jennifer G. McKay, LLC is an "affiliate" within the meaning of Section 15-3-101(a)(iii) of the Uniform Act relative to Jennifer Lynn Gammill McKay.

56.     Each of the following transactions alleged in this Complaint concerns "property" within the meaning of Section 15-3-101(j) of the Uniform Act.

57.     Each of the following transactions alleged in this Complaint concerns an "asset" within the meaning of Section 15-3-101(b) of the Uniform Act.

58.     Each of the following transactions alleged in this Complaint is a "transfer" within the meaning of Section 15-3-101(l) of the Uniform Act.

59.     Each of the following transfers alleged in this Complaint is "fraudulent" within the meaning of Section 15-3-107(1) of the Uniform Act.

60.     Each of the following transfers alleged in this Complaint was made "with actual intent to hinder, delay or defraud" Exxon in the collection of its claims within the meaning of Section 15-3-107(1) of the Uniform Act.

61.     Before or as a result of the following transfers alleged in this Complaint each of CMR, Stewart Gammill, III, the Estate of Stewart Gammill, III and Lynn Crosby Gammill was or became "insolvent" within the meaning of Section 15-3-103 of the Uniform Act relative to the corresponding claims of Exxon.

62.     Each of the following transfers alleged in this Complaint was made by a debtor who "intended to incur, or believed or reasonably should have believed that [the debtor] would incur, debts beyond [the debtor's] ability to pay as they became due" within the meaning of Section 15-3-107(2)(l)(ii) of the Uniform Act.

63.     No defendant who received a transfer alleged in this Complaint is a "person who took in good faith and for a reasonably equivalent value" within the meaning of Section 15-3-113(1) of the Uniform Act.

64.     Stewart Gammill, IV, LLC is not a "good-faith transferee or obligee who took for value" within the meaning of Section 15-3-113(2)(b) of the Uniform Act relative to Stewart Gammill, IV.

65.     Jennifer G. McKay, LLC is not a "good-faith transferee or obligee who took for value" within the meaning of Section 15-3-113(2)(b) of the Uniform Act relative to Jennifer Lynn Gammill McKay.

66.     Upon information and belief, each of the transfers in question was made to a transferee who had knowledge, either actual or constructive, of the alleged fraudulent nature of the transfer.

## COUNT 1

### TRANSFERS BY CMR TO GAMMILL ENTITIES

67.     The allegations set forth in paragraphs 1 through 66 are incorporated in Count 1 by reference as if repeated verbatim.

68.     CMR periodically made payments to Gammill family members either directly or through a wholly controlled intermediary named Interpine, LLC.

69.     CMR and the recipients characterized such payments as loans, and CMR accounted for them as "notes receivable" due from each Gammill family member who received periodic payments from CMR.

70.     There was never any written promissory note prepared for or signed by any Gammill family member in connection with the "notes receivable" account maintained on the books of CMR; nor was there ever any interest charged or paid in connection with such transactions.

71.     At or near the end of each calendar year in question, CMR credited (reduced) the "notes receivable" account by the amount of a so-called capital distribution to each Gammill family member who received payments as alleged in paragraph 68 of this Complaint.

### (Stewart Gammill, IV)

72.     In 2016 CMR made a transfer in the form of a capital distribution to Stewart Gammill, IV in the amount of $373,872.

73.     In 2017 CMR made a transfer in the form of a capital distribution to Stewart Gammill, IV in the amount of $187,871.

74.     At the end of 2019 CMR's "note receivable" balance for Stewart Gammill, IV was approximately $788,000.

### (the Stewart Gammill IV Family Trust)

75.     In 2016 CMR made a transfer in the form of a capital distribution to the Stewart Gammill IV Family Trust in the amount of $133,065.

76.     In 2017 CMR made a transfer in the form of a capital distribution to the Stewart Gammill IV Family Trust in the amount of $66,865.

77.     In 2018 CMR made a transfer in the form of a capital distribution to the Stewart Gammill IV Family Trust in the amount of $186,291.

78.     In 2019 CMR made a transfer in the form of a capital distribution to the Stewart Gammill IV Family Trust in the amount of $20,985.

### (Lucius Olen Crosby Gammill)

79.     In 2016 CMR made a transfer in the form of a capital distribution to Lucius Olen Crosby Gammill in the amount of $373,872.

80.     In 2017 CMR made a transfer in the form of a capital distribution to Lucius Olen Crosby Gammill in the amount of $187,871.

81.     In 2018 CMR made a transfer in the form of a capital distribution to Lucius Olen Crosby Gammill in the amount of $523,421.

82.     In 2019 CMR made a transfer in the form of a capital distribution to Lucius Olen Crosby Gammill in the amount of $58,870.

83.     At the end of 2019 CMR's "note receivable" balance for Lucius Olen Crosby Gammill was approximately $622,000.

### (the Lucius Olen Crosby Gammill Family Trust)

84.     In 2016 CMR made a transfer in the form of a capital distribution to the Lucius Olen Crosby Gammill Family Trust in the amount of $133,065.

85.     In 2017 CMR made a transfer in the form of a capital distribution to the Lucius Olen Crosby Gammill Family Trust in the amount of $66,865.

86.     In 2018 CMR made a transfer in the form of a capital distribution to the Lucius Olen Crosby Gammill Family Trust in the amount of $186,291.

87.     In 2019 CMR made a transfer in the form of a capital distribution to the Lucius Olen Crosby Gammill Family Trust in the amount of $20,985.

### (Jennifer Lynn Gammill McKay)

88.     In 2016 CMR made a transfer in the form of a capital distribution to Jennifer Lynn Gammill McKay in the amount of $373,872.

89.     In 2017 CMR made a transfer in the form of a capital distribution to Jennifer Lynn Gammill McKay in the amount of $187,871.

90.     At the end of 2019 CMR's "note receivable" balance for Jennifer Lynn Gammill McKay was approximately $788,000.

**(the Jennifer Lynn Gammill McKay Family Trust)**

91.     In 2016 CMR made a transfer in the form of a capital distribution to the Jennifer Lynn Gammill McKay Family Trust in the amount of $133,065.

92.     In 2017 CMR made a transfer in the form of a capital distribution to the Jennifer Lynn Gammill McKay Family Trust in the amount of $66,865.

93.     In 2018 CMR made a transfer in the form of a capital distribution to the Jennifer Lynn Gammill McKay Family Trust in the amount of $186,291.

94.     In 2019 CMR made a transfer in the form of a capital distribution to the Jennifer Lynn Gammill McKay Family Trust in the amount of $20,985.

**(Stewart Gammill, IV, LLC)**

95.     In 2018 CMR made a transfer in the form of a capital distribution to Stewart Gammill, IV, LLC in the amount of $663,139.

96.     In 2019 CMR made a transfer in the form of a capital distribution to Stewart Gammill, IV, LLC in the amount of $74,918.

**(Jennifer G. McKay, LLC)**

97.     In 2018 CMR made a transfer in the form of a capital distribution to Jennifer G. McKay, LLC in the amount of $663,139.

98.     In 2019 CMR made a transfer in the form of a capital distribution to Jennifer G. McKay, LLC in the amount of $74,918.

## COUNT 2

## TRANSFERS BY CMR TO LIMITED PARTNERS

### (W. P. McMullan, III)

99.    The allegations set forth in paragraphs 1 through 66 are incorporated in Count 2 by reference as if repeated verbatim.

100.    In 2016 CMR made a transfer in the form of a capital distribution to W. P. McMullan, III in the amount of $57,592.

101.    In 2017 CMR made a transfer in the form of a capital distribution to W. P. McMullan, III in the amount of $28,990.

102.    In 2018 CMR made a transfer in the form of a capital distribution to W. P. McMullan, III in the amount of $80,768.

103.    In 2019 CMR made a transfer in the form of a capital distribution to W. P. McMullan, III in the amount of $9,084.

### (Susan Gay High Williams)

104.    In 2016 CMR made a transfer in the form of a capital distribution to Susan Gay High Williams in the amount of $36,057.

105.    In 2017 CMR made a transfer in the form of a capital distribution to Susan Gay High Williams in the amount of $18,119.

106.    In 2018 CMR made a transfer in the form of a capital distribution to Susan Gay High Williams in the amount of $50,480.

107.    In 2019 CMR made a transfer in the form of a capital distribution to Susan Gay High Williams in the amount of $5,677.

**(Sherrill Wilkes High)**

108.    In 2016 CMR made a transfer in the form of a capital distribution to Sherrill Wilkes High in the amount of $36,057.

109.    In 2017 CMR made a transfer in the form of a capital distribution to Sherrill Wilkes High in the amount of $18,119.

110.    In 2018 CMR made a transfer in the form of a capital distribution to Sherrill Wilkes High in the amount of $50,480.

111.    In 2019 CMR made a transfer in the form of a capital distribution to Sherrill Wilkes High in the amount of $5,677.

**(Jacqueline W. Reed)**

112.    In 2016 CMR made a transfer in the form of a capital distribution to Jacqueline W. Reed in the amount of $17,544.

113.    In 2017 CMR made a transfer in the form of a capital distribution to Jacqueline W. Reed in the amount of $8,816.

114.    In 2018 CMR made a transfer in the form of a capital distribution to Jacqueline W. Reed in the amount of $ 24,561.

115.    In 2019 CMR made a transfer in the form of a capital distribution to Jacqueline W. Reed in the amount of $2,762.

**(the Freeman Willis Smith III Trust)**

116.    In 2016 CMR made a transfer in the form of a capital distribution to the Freeman Willis Smith III Trust in the amount of $36,057.

117.    In 2017 CMR made a transfer in the form of a capital distribution to the Freeman Willis Smith III Trust in the amount of $18,119.

118.   In 2018 CMR made a transfer in the form of a capital distribution to the Freeman Willis Smith III Trust in the amount of $50,480.

119.   In 2019 CMR made a transfer in the form of a capital distribution to the Freeman Willis Smith III Trust in the amount of $5,67.

## (Silver Creek Enterprises, LLC)

120.   In 2016 CMR made a transfer in the form of a capital distribution to Silver Creek Enterprises, LLC in the amount of $26,316.

121.   In 2017 CMR made a transfer in the form of a capital distribution to Silver Creek Enterprises, LLC in the amount of $13,224.

122.   In 2018 CMR made a transfer in the form of a capital distribution to Silver Creek Enterprises, LLC in the amount of $36,842.

123.   In 2019 CMR made a transfer in the form of a capital distribution to Silver Creek Enterprises, LLC in the amount of $4,143.

## (Stephen F. High)

124.   In 2016 CMR made a transfer in the form of a capital distribution to Stephen F. High in the amount of $36,057.

125.   In 2017 CMR made a transfer in the form of a capital distribution to Stephen F. High in the amount of $18,119.

126.   In 2018 CMR made a transfer in the form of a capital distribution to Stephen F. High in the amount of $50,480.

127.   In 2019 CMR made a transfer in the form of a capital distribution to Stephen F. High in the amount of $5,677.

**(the Mildred Reed Gordon Revocable Trust)**

128.    In 2016 CMR made a transfer in the form of a capital distribution to the Mildred Reed Gordon Revocable Trust in the amount of $17,544

129.    In 2017 CMR made a transfer in the form of a capital distribution to the Mildred Reed Gordon Revocable Trust in the amount of $ 8,816.

130.    In 2018 CMR made a transfer in the form of a capital distribution to the Mildred Reed Gordon Revocable Trust in the amount of $24,561.

131.    In 2019 CMR made a transfer in the form of a capital distribution to the Mildred Reed Gordon Revocable Trust in the amount of $2,762.

**(John M. Fairchild)**

132.    In 2016 CMR made a transfer in the form of a capital distribution to John M. Fairchild in the amount of $82,500.

133.    In 2017 CMR made a transfer in the form of a capital distribution to John M. Fairchild in the amount of $41,456.

134.    In 2018 CMR made a transfer in the form of a capital distribution to John M. Fairchild in the amount of $115,500.

135.    In 2019 CMR made a transfer in the form of a capital distribution to John M. Fairchild in the amount of $12,990.

**(Mark A. Fairchild)**

136.    In 2016 CMR made a transfer in the form of a capital distribution to Mark A. Fairchild in the amount of $82,500.

137.    In 2017 CMR made a transfer in the form of a capital distribution to Mark A. Fairchild in the amount of $41,456.

138.   In 2018 CMR made a transfer in the form of a capital distribution to Mark A. Fairchild in the amount of $115,500.

139.   In 2019 CMR made a transfer in the form of a capital distribution to Mark A. Fairchild in the amount of $12,990.

**(Thomas R. Slough, III)**

140.   In 2016 CMR made a transfer in the form of a capital distribution to Thomas R. Slough, III in the amount of $26,316.

141.   In 2017 CMR made a transfer in the form of a capital distribution to Thomas R. Slough, III in the amount of $13,224.

142.   In 2018 CMR made a transfer in the form of a capital distribution to Thomas R. Slough, III in the amount of $36,842.

143.   In 2019 CMR made a transfer in the form of a capital distribution to Thomas R. Slough, III in the amount of $4,143.

**(Mary George W. McMullan)**

144.   In 2016 CMR made a transfer in the form of a capital distribution to Mary George W. McMullan in the amount of $57,692.

145.   In 2017 CMR made a transfer in the form of a capital distribution to Mary George W. McMullan in the amount of $28,990.

146.   In 2018 CMR made a transfer in the form of a capital distribution to Mary George W. McMullan in the amount of $80,769.

147.   In 2019 CMR made a transfer in the form of a capital distribution to Mary George W. McMullan in the amount of $35,886.

**(Cassandra B. Torbett)**

148.     In 2016 CMR made a transfer in the form of a capital distribution to Cassandra B. Torbett in the amount of $72,114.

149.     In 2017 CMR made a transfer in the form of a capital distribution to Cassandra B. Torbett in the amount of $36,237.

150.     In 2018 CMR made a transfer in the form of a capital distribution to Cassandra B. Torbett in the amount of $100,960.

151.     In 2019 CMR made a transfer in the form of a capital distribution to Cassandra B. Torbett in the amount of $11,355.

**(Robert A. Bass)**

152.     In 2016 CMR made a transfer in the form of a capital distribution to Robert A. Bass in the amount of $72,114.

153.     In 2017 CMR made a transfer in the form of a capital distribution to Robert A. Bass in the amount of $36,237.

154.     In 2018 CMR made a transfer in the form of a capital distribution to Robert A. Bass in the amount of $100,960.

155.     In 2019 CMR made a transfer in the form of a capital distribution to Robert A. Bass in the amount of $11,355.

**(Robert Reed Doyle)**

156.     In 2016 CMR made a transfer in the form of a capital distribution to Robert Reed Doyle in the amount of $8,772.

157.     In 2017 CMR made a transfer in the form of a capital distribution to Robert Reed Doyle in the amount of $4,408.

158.    In 2018 CMR made a transfer in the form of a capital distribution to Robert Reed Doyle in the amount of $12,281.

159.    In 2019 CMR made a transfer in the form of a capital distribution to Robert Reed Doyle in the amount of $1,381.

**(the Mariella Hairston Doyle Family Trust)**

160.    In 2016 CMR made a transfer in the form of a capital distribution to the Mariella Hairston Doyle Family Trust in the amount of $8,772.

161.    In 2017 CMR made a transfer in the form of a capital distribution to the Mariella Hairston Doyle Family Trust in the amount of $4,408.

162.    In 2018 CMR made a transfer in the form of a capital distribution to the Mariella Hairston Doyle Family Trust in the amount of $12,281.

163.    In 2019 CMR made a transfer in the form of a capital distribution to the Mariella Hairston Doyle Family Trust in the amount of $1,381.

**(Lynne Fairchild Harvison)**

164.    In 2016 CMR made a transfer in the form of a capital distribution to Lynne Fairchild Harvison in the amount of $23,077.

165.    In 2017 CMR made a transfer in the form of a capital distribution to Lynne Fairchild Harvison in the amount of $11,596.

166.    In 2018 CMR made a transfer in the form of a capital distribution to Lynne Fairchild Harvison in the amount of $32,308.

167.    In 2019 CMR made a transfer in the form of a capital distribution to Lynne Fairchild Harvison in the amount of $3,634.

**(Theresa Jan Michaels)**

168.    In 2016 CMR made a transfer in the form of a capital distribution to Theresa Jan Michaels in the amount of $23,077.

169.    In 2017 CMR made a transfer in the form of a capital distribution to Theresa Jan Michaels in the amount of $11,596.

170.    In 2018 CMR made a transfer in the form of a capital distribution to Theresa Jan Michaels in the amount of $32,308.

171.    In 2019 CMR made a transfer in the form of a capital distribution to Theresa Jan Michaels in the amount of $3,634.

**(Eldia Lin Pope)**

172.    In 2016 CMR made a transfer in the form of a capital distribution to Eldia Lin Pope in the amount of $23,077.

173.    In 2017 CMR made a transfer in the form of a capital distribution to Eldia Lin Pope in the amount of $11,596.

174.    In 2018 CMR made a transfer in the form of a capital distribution to Eldia Lin Pope in the amount of $32,307.

175.    In 2019 CMR made a transfer in the form of a capital distribution to Eldia Lin Pope in the amount of $3,634.

**COUNT 3**

**TRANSFERS OF INTERESTS IN CMR BY LYNN CROSBY GAMMILL**

176.    The allegations set forth in paragraphs 1 through 66 are incorporated in Count 3 by reference as if repeated verbatim.

177.   In 2017, upon information and belief, Lynn Crosby Gammill transferred approximately a 4.4355% ownership interest in CMR to the Stewart Gammill IV Family Trust without receiving reasonably equivalent value.

178.   In 2017, upon information and belief, Lynn Crosby Gammill transferred approximately a 4.4355% ownership interest in CMR to the Lucius Olen Crosby Gammill Family Trust without receiving reasonably equivalent value.

179.   In 2017, upon information and belief, Lynn Crosby Gammill transferred approximately a 4.4355% ownership interest in CMR to the Jennifer Lynn Gammill McKay Family Trust without receiving reasonably equivalent value.

180.   In 2017 Lynn Crosby Gammill transferred approximately a 3.326625% ownership interest in CMR to Stewart Gammill IV without receiving reasonably equivalent value.

181.   In 2017 Lynn Crosby Gammill transferred approximately a 3.326625% ownership interest in CMR to Jennifer Lynn Gammill McKay without receiving reasonably equivalent value.

## COUNT 4

### TRANSFERS OF INTERESTS IN CMR BY STEWART GAMMILL, IV

182.   The allegations set forth in paragraphs 1 through 66 are incorporated in Count 4 by reference as if repeated verbatim.

183.   In 2017, upon information and belief, Stewart Gammill, IV transferred approximately a 15.789% ownership interest in CMR to Stewart Gammill, IV, LLC without receiving reasonably equivalent value.

## COUNT 5

### TRANSFERS OF INTERESTS IN CMR BY JENNIFER LYNN GAMMILL MCKAY

184.    The allegations set forth in paragraphs 1 through 66 are incorporated in Count 5 by reference as if repeated verbatim.

185.    In 2017, upon information and belief, Jennifer Lynn Gammill McKay transferred approximately a 15.789% ownership interest in CMR to Jennifer G. McKay, LLC without receiving reasonably equivalent value.

## COUNT 6

### TRANSFERS OF INTERESTS IN CATAHOULA CREEK, LP BY LYNN CROSBY GAMMILL AND/OR STEWART GAMMILL, III

186.    The allegations set forth in paragraphs 1 through 66 are incorporated in Count 6 by reference as if repeated verbatim.

187.    Prior to 2016, upon information and belief, Lynn Crosby Gammill and/or Stewart Gammill, III transferred approximately a 12.03542% ownership interest in Catahoula Creek, LP to Stewart Gammill, IV without receiving reasonably equivalent value.

188.    Prior to 2016, upon information and belief, Lynn Crosby Gammill and/or Stewart Gammill, III transferred a 50% interest in Catahoula Mgt., LLC, which owns approximately a 1% interest in Catahoula Creek, LP, to Stewart Gammill, IV without receiving reasonably equivalent value.

189.    Prior to 2016, upon information and belief, Lynn Crosby Gammill and/or Stewart Gammill, III transferred approximately a 12.03542% ownership interest in Catahoula Creek, LP to Lucius Olen Crosby Gammill without receiving reasonably equivalent value.

190.    Prior to 2016, upon information and belief, Lynn Crosby Gammill and/or Stewart Gammill, III transferred approximately a 12.03542% ownership interest in Catahoula Creek, LP to Jennifer Lynn Gammill McKay without receiving reasonably equivalent value.

191.    Prior to 2016, upon information and belief, Lynn Crosby Gammill and/or Stewart Gammill, III transferred a 50% interest in Catahoula Mgt., LLC, which owns approximately a 1% interest in Catahoula Creek, LP, to Jennifer Lynn Gammill McKay without receiving reasonably equivalent value.

192.    In 2016, Lynn Crosby Gammill and/or Stewart Gammill, III transferred approximately a 31.44687% ownership interest in Catahoula Creek, LP to Stewart Gammill, IV without receiving reasonably equivalent value.

193.    In 2016, Lynn Crosby Gammill and/or Stewart Gammill, III transferred approximately a 31.44687% ownership interest in Catahoula Creek, LP to Jennifer Lynn Gammill McKay without receiving reasonably equivalent value.

## COUNT 7

### TRANSFERS OF INTERESTS IN FAMILY LANDS, LP
### BY STEWART GAMMILL, III AND/OR LYNN CROSBY GAMMILL

194.    The allegations set forth in paragraphs 1 through 66 are incorporated in Count 7 by reference as if repeated verbatim.

195.    Upon information and belief, Stewart Gammill, III and/or Lynn Crosby Gammill transferred approximately a 39.3923% ownership interest in Family Lands, LP to Stewart Gammill, IV without receiving reasonably equivalent value.

196.    Upon information and belief, Stewart Gammill, III and/or Lynn Crosby Gammill transferred approximately a 21.2154% ownership interest in Family Lands, LP to Lucius Olen Crosby Gammill without receiving reasonably equivalent value.

197.    Upon information and belief, Stewart Gammill, III and/or Lynn Crosby Gammill transferred approximately a 39.3923% ownership interest in Family Lands, LP to Jennifer Lynn Gammill McKay without receiving reasonably equivalent value.

## COUNT 8

### TRANSFERS OF INTERESTS IN THE HARDY STREET PROPERTY BY STEWART GAMMILL, III AND/OR LYNN CROSBY GAMMILL

198.    The allegations set forth in paragraphs 1 through 66 are incorporated in Count 8 by reference as if repeated verbatim.

199.    Upon information and belief, Stewart Gammill, III and/or Lynn Crosby Gammill transferred approximately a 33.3% ownership interest in a property located on Hardy Street in Hattiesburg, Mississippi (known as the "Hardy Street Property"), to Stewart Gammill, IV without receiving reasonably equivalent value.

200.    Upon information and belief, Stewart Gammill, III and/or Lynn Crosby Gammill transferred approximately a 33.3% ownership interest in the Hardy Street Property to Lucius Olen Crosby Gammill without receiving reasonably equivalent value.

201.    Upon information and belief, Stewart Gammill, III and/or Lynn Crosby Gammill transferred approximately a 33.3% ownership interest in the Hardy Street Property to Jennifer Lynn Gammill McKay without receiving reasonably equivalent value.

## COUNT 9

### TRANSFERS OF INTERESTS IN 513 ACRES OF LAND BY STEWART GAMMILL, III AND/OR LYNN CROSBY GAMMILL

202.    The allegations set forth in paragraphs 1 through 66 are incorporated in Count 9 by reference as if repeated verbatim.

203.   Upon information and belief, Stewart Gammill, III and/or Lynn Crosby Gammill transferred approximately a 50% ownership interest in 513 acres of land located in Mississippi known as Tallowah to Stewart Gammill, IV without receiving reasonably equivalent value.

204.   Upon information and belief, Stewart Gammill, III and/or Lynn Crosby Gammill transferred approximately a 50% ownership interest in 513 acres of land located in Mississippi known as Tallowah to Lucius Olen Crosby Gammill without receiving reasonably equivalent value.

## COUNT 10

### TRANSFERS OF INTERESTS IN 881 ACRES OF LAND
### BY STEWART GAMMILL, III AND/OR LYNN CROSBY GAMMILL

205.   The allegations set forth in paragraphs 1 through 66 are incorporated in Count 10 by reference as if repeated verbatim.

206.   Upon information and belief, Stewart Gammill, III and/or Lynn Crosby Gammill transferred approximately an 18.3% ownership interest in 881 acres of land located in Mississippi to Stewart Gammill, IV without receiving reasonably equivalent value.

207.   Upon information and belief, Stewart Gammill, III and/or Lynn Crosby Gammill transferred approximately an 18.3% ownership interest in 881 acres of land located in Mississippi to Lucius Olen Crosby Gammill without receiving reasonably equivalent value.

208.   Upon information and belief, Stewart Gammill, III and/or Lynn Crosby Gammill transferred approximately an 18.3% ownership interest in 881 acres of land located in Mississippi to Jennifer Lynn Gammill McKay without receiving reasonably equivalent value.

## COUNT 11

### TRANSFERS OF INTERESTS IN 9,808 NET MINERAL ACRES
### BY STEWART GAMMILL, III AND/OR LYNN CROSBY GAMMILL

209.    The allegations set forth in paragraphs 1 through 66 are incorporated in Count 11 by reference as if repeated verbatim.

210.    Upon information and belief, Stewart Gammill, III and/or Lynn Crosby Gammill transferred approximately a 16% ownership interest in 9,808 net mineral acres located in Mississippi to Stewart Gammill, IV without receiving reasonably equivalent value.

211.    Upon information and belief, Stewart Gammill, III and/or Lynn Crosby Gammill transferred approximately a 16% ownership interest in 9,808 net mineral acres located in Mississippi to Lucius Olen Crosby Gammill without receiving reasonably equivalent value.

212.    Upon information and belief, Stewart Gammill, III and/or Lynn Crosby Gammill transferred approximately a 16% ownership interest in 9,808 net mineral acres located in Mississippi to Jennifer Lynn Gammill McKay without receiving reasonably equivalent value.

### COUNT 12

### TRANSFERS OF INTERESTS IN 40 ACRES OF LAND
### BY STEWART GAMMILL, III AND/OR LYNN CROSBY GAMMILL

213.    The allegations set forth in paragraphs 1 through 66 are incorporated in Count 12 by reference as if repeated verbatim.

214.    Upon information and belief, Stewart Gammill, III and/or Lynn Crosby Gammill transferred approximately a 100% ownership interest in 40 acres of land located in Mississippi to Jennifer Lynn Gammill McKay without receiving reasonably equivalent value.

## COUNT 13

### TRANSFERS OF CASH BY LYNN CROSBY GAMMILL

215.     The allegations set forth in paragraphs 1 through 66 are incorporated in Count 13

by reference as if repeated verbatim.

216.     Lynn Crosby Gammill made the made the following transfers of cash to Stewart

Gammill, IV out of an account she maintained at Trustmark National Bank as gifts:

 a) $10,000 on or about March 14, 2016

 b) $5,000 on or about April 9, 2016

 c) $8,000 on or about October 18, 2016

 d) $1,000 on or about December 25, 2016

 e) $5,000 on or about January 1, 2017

 f) $5,000 on or about March 7, 2017

217.     Lynn Crosby Gammill made the made the following transfers of cash to Stewart

Gammill, IV out of an account she maintained at BancorpSouth Bank as gifts:

 a) $1,000 on or about October 6, 2016

 b) $500 on or about December 25, 2017

 c) $1,000 on or about October 6, 2018

218.     Lynn Crosby Gammill made the made the following transfers of cash to Jennifer

Lynn Gammill McKay out of an account she maintained at Trustmark National Bank as gifts:

 a) $23,000 on or about March 10, 2016

 b) $14,000 on or about October 18, 2016

 c) $5,000 on or about January 1, 2017

219.    Lynn Crosby Gammill made the made the following transfers of cash to Jennifer Lynn Gammill McKay out of an account she maintained at BancorpSouth Bank as gifts:

  a)    $5,000 on or about February 2, 2016

  b)    $1,000 on or about December 25, 2017

  c)    $4,000 on or about April 5, 2018

  d)    $1,000 on or about October 21, 2018

  e)    $3,000 on or about November 16, 2018

## DECLARATORY RELIEF

220.    Exxon is entitled to declaratory relief in the form of a judgment declaring that each transfer alleged in this Complaint is a voidable transfer within the meaning of the Uniform Act and further declaring that each transfer declared to be a fraudulent transfer is void.

221.    Exxon is entitled to declaratory relief in the form of a judgment declaring whether each claim or security interest asserted by FirstBank Financial Services is voidable within the meaning of the Uniform Act and further declaring that each such claim or security interest declared to be voidable is void.

## PRAYER FOR RELIEF

Plaintiff, Exxon Mobil Corporation, prays for judgment in its favor and against all defendants as follows:

1.    relative to the foregoing transfers alleged in this Complaint,

  a)    judgment declaring each transfer is a voidable fraudulent transfer within the meaning of the Uniform Act,

  b)    judgment declaring void and setting aside each transfer declared to be a fraudulent transfer, and

    c)      judgment for the value of each asset declared to be fraudulently transferred, adjusted as required by law, against the original transferee;

2.      prejudgment and post judgment interest, along with reasonable attorneys' fees and costs; and

3.      all general and equitable relief deemed appropriate by this Honorable Court.

Plaintiff, Exxon Mobil Corporation, further prays with regard to defendant, FirstBank Financial Services:

1.      that judgment be entered declaring whether each claim or security interest asserted by said defendant with regard to the Hardy Street Property or in property owned by or through Family Lands, LP is voidable; and

2.      that judgment be entered declaring void and setting aside each such claim or security interest declared to be voidable.

Respectfully submitted, this ___ day of June, 2020.

EXXON MOBIL CORPORATION

By: _____
Otis Johnson, Jr., Its Attorney

OF COUNSEL:
Otis Johnson, Jr., Esq.
Biggs, Pettis, Ingram & Solop, PLLC
P.O. Box 14028
Jackson, MS 39236-4028
phone: 601-713-1192
fax: 601-713-2049
ojohnson@bpislaw.com